IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Farrow Road Dental Group, P.A. and all others similarly situated,<br><br>      Plaintiff,<br><br> vs.<br><br>AT&T Corp., and Bellsouth Telecommunications, LLC d/b/a AT&T Southeast or d/b/a AT&T South Carolina,<br>      Defendants. | Civil Action No. 3:17-cv-01615-CMC<br><br>**OPINION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br>**(ECF No. 17)** |

  Through this putative nationwide class action, Plaintiff Farrow Road Dental Group, P.A. ("Farrow Road") seeks recovery from Defendants AT&T Corp. and Bellsouth Telecommunications[1] (collectively "AT&T") for damages arising out of the parties' former business relationship. That relationship was governed, at least in part, by a Business Service Agreement ("BSA"). See ECF No. 17-2 at 6-19.

  The matter is before the court on AT&T's motion to compel arbitration as to all claims and to stay the action pending arbitration. ECF No. 17. This motion relies on an arbitration clause found in the BSA. For the reasons set forth below, AT&T's motion is granted. Plaintiff must pursue its claims in arbitration.

---

[1] Defendants note "Farrow Road has incorrectly named AT&T Corp. as a defendant. Farrow Road's service provider was BellSouth Telecommunications, LLC, d/b/a AT&T South Carolina." ECF No. 17-1 at 1. To minimize confusion, the court will refer to Defendants collectively as "AT&T."

## THE COMPLAINT

Farrow Road is a dental practice that utilized AT&T for its phone service from 2006 to 2015. ECF No. 1-1, Compl. at ¶ 7; ECF No. 17-2, Decl. of Candace Johnson, at ¶ 4. In 2011, Farrow Road ordered one line of service from AT&T. ECF No. 17 at ¶ 4. As is its practice, AT&T mailed an order confirmation letter and BSA to Farrow Road. *Id.* at ¶¶ 5-6. In 2014, Farrow Road renewed its current phone line and added four more lines of service. *Id.* at 8. Again, AT&T mailed the order confirmation letter and BSA to Farrow Road. *Id.*

In September of 2015, Farrow Road requested all five telephone numbers then in service with AT&T be transferred to another service provider, Time Warner Cable. Compl. at ¶ 7. AT&T disconnected the phone numbers or "otherwise failed to properly port the numbers." *Id.* at ¶ 8. Therefore, Farrow Road's existing patients and potential patients contacting Farrow Road through its phone numbers received an automatic message the numbers were no longer in service, and advised callers to "press 1 now" to be connected to a "new" dentist. *Id.* This directed existing and new patients to dentists other than Farrow Road. *Id.* This message was received by callers from September 2015 to January 28, 2016. *Id.* at ¶ 9.

Based on AT&T's alleged failure to properly disconnect, transfer, and/or port the telephone lines, Plaintiffs assert four causes of action: negligence, fraud, fraudulent concealment, and negligence *per se* in violation of the Telecommunications Act of 1996. *Id.*

## ARBITRATION CLAUSE

On the first page of the BSA, the last sentence of the first paragraph notes, in all capital letters, THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE

ENFORCED BY THE PARTIES. ECF No. 17-2 at 13. The arbitration clause on which AT&T relies reads as follows:

> 8. Arbitration.
>
> a. AT&T and You agree to exercise best efforts to resolve all disputes and claims between us through good faith negotiation. AT&T and You further agree that any such dispute or claim that cannot be resolved through negotiations shall be resolved by binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules in effect at the time the dispute is submitted for resolution (the "Rules"), as may be modified by this Agreement. This agreement to arbitrate is intended to be broadly interpreted. YOU AGREE THAT, BY ENTERING INTO THIS AGREEMENT, YOU AND AT&T ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION.

*Id.* at 17. Further, the BSA notes

> e. The arbitrator may award injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. YOU AGREE THAT, BY ENTERING INTO THIS AGREEMENT, YOU AND AT&T ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION. AT&T AND YOU AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. Furthermore, unless You and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or collective proceeding. If this specific provision is found to be unenforceable, then the arbitration provision shall be null and void.

*Id.* at 18.

## STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §1 et seq., provides that arbitration clauses in contracts that involve interstate commerce "shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v Conception,* 563 U.S. 333, 339 (2011). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Under the FAA, the court compels arbitration if the movant, here AT&T, demonstrates "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration clause which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (internal quotation omitted).

"[T]he heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir.1989). "Thus, we may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) (internal quotation marks and citation omitted).

The heavy presumption in favor of arbitrability is not, however, so strong as to require a finding of arbitrability whenever there is an otherwise binding arbitration clause between the

4

parties not touching on the subject matter of the dispute. *See, e.g., United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960) ("a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *Newbanks v. Cellular Sales of Knoxville, Inc.*, 548 Fed. App'x 851 (4th Cir. 2013) (affirming denial of motion to compel arbitration because the contract on which movant relied did not govern the particular relationship and time period at issue). Instead, the court must consider the particular language of the arbitration clause, including whether it is narrowly or broadly written. *American Recovery*, 96 F.3d at 93 (noting distinction between narrowly worded arbitration clauses such as those covering only "claims arising under the contract" and broadly worded clauses, such as those covering "any dispute arising out of or relating to" a contract). The court must then "determine whether the factual allegations underlying the claim are within the scope of the clause, regardless of the legal label assigned to the claim." *American Recovery*, 96 F.3d at 93 (quoting *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 319 (4th Cir. 1988)).

## DISCUSSION

Plaintiff opposes AT&T's motion to compel arbitration, arguing "(1) the facts giving rise to this action occurred outside the contract, (2) the arbitration clause is unenforceable because it is part of an adhesion contract and unconscionable under South Carolina law, (3) Plaintiff was unaware of and did not consent to the arbitration clause, and (4) Defendants have not produced any contract or evidence of providing a contract containing the arbitration clause to Plaintiff." ECF No. 18.

5

In its reply, AT&T challenges Plaintiff's arguments because "binding precedent forecloses each of the objections that Farrow Road makes to enforcement of its arbitration agreements with AT&T." ECF No. 21 at 7. AT&T argues a contract was entered which contained a valid arbitration clause, the arbitration clause at issue covers all claims by Plaintiff, and the arbitration agreement is not unconscionable. *Id.* at 7-8.

### A. Agreement to Arbitrate

Farrow Road argues it did not consent to the arbitration clause and there was no evidence AT&T had even provided the BSA to Farrow Road. However, in response, AT&T produced evidence, both in the form of its policy and procedure and in a declaration and supporting documentation from AT&T's system, that its Confirmation Letters were sent to Farrow Road in 2011 and 2014. *See* ECF No. 21 at 9; ECF No. 21-1 at ¶¶ 3-4; 21-1 Ex. A. As recognized by both parties, "[e]vidence of mailing establishes a rebuttable presumption of receipt." *Bakala v. Bakala*, 576 S.E.2d 156, 163 (S.C. 2003). Farrow Road has not rebutted that presumption. Therefore, it is assumed Farrow Road received the BSA and assented to its terms, as it did not call AT&T to discuss the terms or cancel service after receipt. *See* ECF No. 17-2 at 13 ("Enclosed please find your AT&T Business Service Agreement (BSA), which provides the terms and conditions for the AT&T business services you ordered. If you agree with the terms and conditions, no action is required. If you do not agree with the terms and conditions, please contact us at the number below to discuss service alternatives. Continued use of the AT&T business services constitutes your acceptance of the BSA."); *Laidlaw Envtl. Servs., (TOC), Inc. v. Honeywell, Inc.*, 966 F. Supp. 1401, 1409 (D.S.C. 1996), *aff'd,* 113 F.3d 1232 (4th Cir. 1997) ("Pursuant to South Carolina law,

6

conduct manifesting assent constitutes acceptance of the offered terms. Thus, compliance with the proffered terms and conditions constitutes acceptance of an offer, and assent need not be express, but may be inferred from the parties' conduct.") (citations omitted). Therefore, Farrow Road consented to the terms of the BSA, which governed the parties' contractual relationship and included an arbitration clause.

In addition, Farrow Road argues the contract was not supported by consideration. However, unlike the case cited by Farrow Road, *Noohi v. Toll Bros.*, 708 F.3d 599 (4th Cir. 2013), which required only one party to bring its claims in arbitration, in this case the BSA requires both parties to submit any disputes to arbitration. ECF No. 17-2 at 17 ("YOU AGREE THAT, BY ENTERING INTO THIS AGREEMENT, YOU AND AT&T ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION."). This case is further distinguishable from *Noohi* as that case applied Maryland law, which requires independent consideration for an arbitration clause. 708 F.3d at 609. South Carolina law does not share this requirement: "no special consideration need be singled out or apportioned for each separate provision in a contract." *Furse v. Timber Acquisition*, 401 S.E.2d 155, 156 (S.C. 1991). Therefore, valid consideration was provided to both sides, and the arbitration clause is not unenforceable for lack of consideration.

  *B. Unconscionability*

Next, Farrow Road argues the arbitration clause in the BSA is unenforceable because it is an unconscionable term in a contract of adhesion. ECF No. 18 at 5. "In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to

7

one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 668 (S.C. 2007). In determining whether the parties had meaningful choice, six factors are considered: "the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause." *Id.* at 669.

In considering these factors, the court finds the balance favors arbitration. One factor, the nature of injuries suffered by the plaintiff, may favor Farrow Road, as it allegedly suffered injury to its business when its phone lines were not ported properly and callers received a message directing their call to a different dentist. In addition, the second factor likely favors Farrow Road, which does not appear to be a "substantial business concern" compared to AT&T. *See Smith v. D.R. Horton*, 790 S.E.2d 1, 5 (S.C. 2016) (finding the plaintiff was not a substantial business concern "as they did not comprise a large portion of [defendant's] clientele."). However, "[t]he mere fact that one party to the contract is larger than the other cannot be the basis of a finding of unconscionability of an arbitration clause in a contract." *Rowe v. AT&T, Inc.*, No. 6:13-cv-1206, 2014 WL 172510 (D.S.C. Jan. 15, 2014) (quoting *Stedor Enters., Ltd. v. Armtex, Inc.*, 947 F.2d 727, 737 (4th Cir. 1991)).

The remainder of the factors favor AT&T. Farrow Road is a small business; although it argues it is "trained in dental science and medicine, not interpreting contract language" (ECF No. 18 at 7), setting up a small business requires business acumen and likely legal assistance. If Farrow

8

Road was concerned about the myriad contracts it entered into when setting up a business, it could have easily had a lawyer review them. Farrow Road also argues "the agreement was not presented to Plaintiff in a manner or timeframe that would allow adequate time to review and decide to accept or reject AT&T's terms and conditions." *Id.* However, the BSA clearly provided a method to challenge or decline its terms.

Finally, Farrow Road argues the arbitration clause is inconspicuous and caused surprise to Farrow Road. Although it is true the arbitration clause was in section 8, on page 10 of the BSA, and parts of the clause are in regular type (not capitalized, bolded, etc.), the notice that both parties are waiving their right to a jury trial and to participate in a class action is in all capital letters in sections 8(a) and 8(e). *See* ECF No. 17-2 at 17-18. Further, a notice at the beginning of the BSA, in the introduction and before the definitions, states in all capital letters "THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES." *Id.* at 13. Therefore, the court finds the clause to be conspicuous and not surprising to a reader of the BSA.

Farrow Road argues the limited remedies in the BSA render the arbitration clause unconscionable. This argument regarding the limitation of potential claims and remedies was rejected in *Rowe*, where the court found "the proper course is to compel arbitration" when it is uncertain how the arbitrator will construe remedial limitations. *Rowe*, 2014 WL 172510, at *11 (quoting *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406-07 (2003)). The BSA contains a severability provision the arbitrator may apply if he or she finds any of the limitations unenforceable.

9

Further, AT&T has offered to arbitrate under its current consumer arbitration provision, instead of the one found in the BSA. ECF No. 21 at 18. AT&T has also agreed to waive all limitations of liability to which Farrow Road has objected. ECF No. 23. Regardless of whether Farrow Road chooses to arbitrate under the BSA or the consumer arbitration provision, AT&T has waived the following limitations: 1) the cap on damages in paragraph 7(b) of the BSA, limiting recovery to "the applicable credits" specified in the tariff, guidebook, or service guide, or if no credits are specified, to an amount equal to the charge for the effective service for the time period of the problem; 2) any provision that would limit the remedies under the Telecommunications Act of 1996; and 3) any provision that would prohibit punitive damages. *Id.* Therefore, Farrow Road's unconscionability argument based upon limitation of remedies is moot.

As the weight of the factors favor AT&T, the court finds the arbitration clause is not unconscionable.

### *C. Application of Arbitration Clause to Plaintiff's Claims*

Farrow Road argues the events in dispute in this case took place after it terminated service with AT&T, and therefore the BSA and arbitration clause no longer governed the parties' relationship. However, the arbitration clause notes "all disputes and claims between us" are subject to arbitration, and the "agreement to arbitrate is intended to be broadly interpreted." ECF No. 17-2 at 17. Similar language has been held by the Fourth Circuit to "encompass all agreements and any disputes, past and present, especially given that the presumption in favor of arbitrability is particularly applicable when the arbitration clause is broadly worded." *Levin v. Alms and Assoc.*, 634 F.3d 260, 267 (4th Cir. 2011). Even if service was terminated, that does not mean the

obligation to arbitrate disputes ended. Under South Carolina law, "[a]rbitration clauses are separable from the contracts in which they are imbedded . . .the general rule [is] that the duty to arbitrate under an arbitration clause in a contract survives termination of the contract." *Jackson Mills, Inc. v. BT Capital Corp.*, 312 S.C. 400, 403 (S.C. 1994). Therefore, the arbitration clause is not rendered void by the cancellation of service provided by AT&T.

Farrow Road also argues its claims are not covered by the arbitration clause at issue here, citing *Sutton's* holding as "when claims are based in tort, not in contract law, the plaintiff could not be required to submit to arbitration." *Sutton v. Hollywood Ent. Corp.*, 181 F. Supp. 2d 504, 511-12 (D. Md. 2002). However, it is not the classification of the claims that determines whether an arbitration clause applies, but rather the claim's relationship to the contract: "a broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001). Therefore, even if porting the phone numbers was not explicitly contemplated under the BSA[2], the close relationship of the allegedly negligent conduct to the subject of the BSA – service of the phone lines – means the broad arbitration clause of the BSA applies to Farrow Road's claims.

Finally, the "heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Id.*

---

[2] Although porting of telephone numbers was not explicit under the BSA, the Telecommunications Act of 1996 imposes a duty on local exchange carriers "to provide, to the extent technically feasible, number portability." 47 U.S.C. § 251(b)(2).

11

As the court has determined the arbitration clause survived termination of the contract, and the claims of failed portability, even if not explicitly covered by the BSA, had a "significant relationship" to the contract containing the arbitration clause, Farrow Road's claims are subject to arbitration.

## CONCLUSION

For the reasons set forth above, AT&T's motion to compel arbitration is granted, and this matter is stayed pending arbitration. The parties are directed to initiate arbitration within 14 days and file a status report no later than 180 days from the date of entry of this Order.

**IT IS SO ORDERED**.

s/ Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
Senior United States District Judge

Columbia, South Carolina
September 22, 2017